UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | 2:18-CR-031-PLR |
| vs. | ) | |
| ALFRED DOLO, | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION

Defendant, Alfred Dolo, (Dolo) has filed a Motion to Suppress [Doc. 23]. The United States filed a response [Doc. 33] with audio recordings [Doc. 34]. This matter is before the Court pursuant to 28 U.S.C. 636(b) and the standing orders of the District Court for a Report and Recommendation.

On October 29, 2018, the Court conducted an evidentiary hearing on Dolo's motion. Present at the hearing were Dolo, his counsel, Nikki C. Pierce, Esq., and Special Assistant United States Attorney Thomas A. McCauley, Esq. Testifying at the hearing were Officers Brittney Eberhardt and Preston Vaught of the Johnson City Police Department ("JCPD"), Malcolm Duncan and Beth Holzknecht, an Investigator for the Federal Defender Services ("FDS"). The matter is now ripe for resolution. For the reasons stated herein, the undersigned RECOMMENDS the Motion to Suppress [Doc. 23] be DENIED.

**I.  PROCEDURAL BACKGROUND**

On February 13, 2018, a federal grand jury returned an indictment against Dolo charging him with possessing with the intent to distribute "crack" cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) [Doc. 1]. On August 20, 2018, Dolo filed a Motion to Suppress [Doc. 23] arguing that the investigatory stop conducted by law enforcement violated the Fourth Amendment

as it was not supported by reasonable suspicion. He claims the crack cocaine discovered during the stop and his subsequent confession should be suppressed. The United States responds that the investigatory stop of the vehicle was supported by reasonable suspicion based on the totality of the circumstances.

## II. FINDINGS OF FACT

On June 14, 2017, a spree of 911 calls began flooding Washington County's 911 dispatch (Dispatch). At 3:42 p.m., it received its first call that a car window had been shot out at the local Earth Fare market. Shortly after, it received a call of a bullet coming through a window on West Walnut Street just down the street from Earth Fare. *See* Ex. 2 and Ex. 3, Audio File 3. At 3:52 p.m., the ETSU Public Safety Office reported to dispatch that an individual was shot with an airsoft gun while walking on campus by a white driver in a late model burgundy Chevy Impala. *See* Ex. 2 and Ex. 3, Audio File 2. The ETSU report was provided by phone; officers on patrol could not hear the call. A 3:56 p.m., dispatch issued a "Be on the look out" (BOLO): "[I]n reference to the shots fired in Johnson City – ETSU called in and advised they've had a subject that was shot by a pellet/air rifle. Said it was a subject in a late model burgundy Impala." *See* Ex. 2 and Ex. 3, Audio File 3. Dispatch did not advise the race of the driver. When Officer Vaught inquired as to the race of the driver, dispatch advised by radio that it did not have a description. *See* Ex. 2 and Ex. 3, Audio File 7.

At 4:13 p.m., dispatch received another call that shots had been fired through windows at a home at 501 North Gilmer Park and a large "BB" was found on the windowsill. *See* Ex. 2 and Ex. 3, Audio File 8. Dispatch described the vehicle involved in that shooting as a burgundy Impala. At 4:15 p.m., another call came in to dispatch that someone had shot a ball bearing at the door to Hillcrest Drug store, but no one saw the subjects or their car. *Id.*, Audio File 9. Officer Vaught then advised that someone had just flagged him down and advised him that he had just been shot

with a "pellet" by someone in a maroon colored car. *Id.*, Audio File 10.

At 4:20 p.m. Officer Eberhardt radioed Officer Vaught to ask about the number of suspects in the vehicle mentioned in his 4:15 radio report. Officer Vaught responded that the victim "saw two at least." *See* Ex. 2 and 3, Audio File 17. Officer Eberhardt next asked if the suspects were two white males. Officer Vaught answered that he could not advise. *Id.* At 4:23, another officer asked for a description of the suspects. Officer Vaught responded that the car was a maroon or burgundy Chevy Impala or Honda Accord with at least two male suspects. He stated he did not know the race of the individuals.

Between 4:30 and 4:44 p.m., dispatch continued to receive calls about shots being fired. At 4:30, a report of shots fired came from 332 Headtown Road. At 4:35, officers advised dispatch that they discovered a quarter inch ball bearing at 801 Sunset Drive. At 4:39, another report of a shooting came in from Vision Works, off of Browns Mill Road. At 4:44 p.m., dispatch advised that a white passenger was believed to be doing the shooting. *See* Ex. 2 and Ex. 3, Audio File 26. At 4:45 p.m., another call reported a shooting that shattered a window at the business of Bear & Friends located at 2519 N. Roan Street. Moments later, a call from Wok & Hibachi at 109 E. Unaka Ave. reported a busted-out car window. At 4:48 p.m., dispatch reported that a county deputy just saw a "dark maroon Impala" with dark tinted windows traveling on State of Franklin Road toward the medical center. Officers Eberhardt reported she was en route to the area. At 4:50 p.m., Officer Sparks then radioed the following to all units:

> Before we got any vehicle description when the first calls were going out, I seen [sic] like a **black Impala** going south on John Exum toward the mall. Had a look like a bi-racial male with a do-rag driving. Couldn't see the passenger. Dark tinted windows. Had a drive-out tag or a tag on the right passenger rear window. No tag on the rear of the vehicle. It also looked like it had a small what looked like to be [sic] a racing stripe on the back of the driver's side of the trunk.

*See* Ex. 2 and 3, Audio File 32.

A few minutes after hearing Officer Sparks' transmissions, Officer Eberhardt, who was

traveling on University Parkway, saw a black Impala with its windows down with two occupants pulling out of Monarch Apartments. She immediately turned to follow the vehicle. She saw the drive-out tag on the left side of the black Chevy Impala's rear window and believed the rear window was tinted. She pulled behind the Impala, activated her lights, and stopped the vehicle. The driver had not committed any traffic violations. Officer Vaught, who was in his vehicle, was also present at the traffic stop. Officer Eberhardt approached the driver's side of the car and Officer Vaught approached the passenger side. As Officer Eberhardt approached, she immediately noticed in plain view a pair of brass knuckles in the cupholder, easily accessible to the occupants. She immediately instructed the occupants to exit the vehicle. When Dolo exited out the passenger side of the car, a bag containing a white substance fell to the ground. Dolo immediately placed his foot over it, but not before Officer Vaught noticed it. When he asked Dolo to step away from the vehicle, Dolo dragged his foot, attempting to continue to hide the bag containing what turned out to be crack cocaine. Officer Vaught then seized the cocaine and placed Dolo under arrest. He was ultimately indicted in this Court for possession of crack cocaine.

### III.  ANALYSIS

The Fourth Amendment protects persons against "unreasonable searches and seizures" and its "protections extend to brief investigatory stops of … vehicles that fall short of traditional arrests." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). A brief investigatory stop, such as a traffic stop, does not run afoul of the Fourth Amendment, however, when a law enforcement officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). The standard for determining whether the officer had reasonable suspicion to conduct the stop "takes into account 'the totality of the circumstances— the whole picture.'" *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014)

(quoting *Cortez*, 449 U.S. at 417); see also *Humphrey v. Mabry,* 482 F.3d 840, 846 (6th Cir. 2007) (quoting *Feathers v. Aey,* 319 F.3d 843, 849 (6th Cir. 2003)).

To establish reasonable suspicion, the government must be "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion as measured by an objective standard." *United States v. Vite-Espinoza*, 342 F.3d 462, 466 (6th Cir. 2003) (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)). It need not be based only "on the officer's personal observation" but may also consider "information supplied by another person." *Navarette*, 134 S. Ct. at 1688 (quoting *Adams v. Williams*, 407 U.S. 143, 147 (1972)). It is more than a mere "hunch," see *Terry*, 392 U.S. at 27, but less than probable cause, *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006), and can be based on an officer's direct observations, informant tips, dispatch information such as a BOLO, or directions from other officers. *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008). For a BOLO report to serve as the primary basis for reasonable suspicion, it must provide a description of the suspect(s) or the suspect vehicle that is so distinctive as to "create [ ] a sufficiently narrow class of suspects." *United States v. Hurst,* 228 F.3d 751, 757 (6th Cir. 2000); see also *United States v. Babb,* 77 F.App'x 761, 763 (6th Cir. 2003).

The issue the Court must address is whether the BOLO created a sufficiently narrow class of suspects that would justify the stop in this case. The Court finds that it does. First, dispatch issued a BOLO regarding two occupants in a dark colored Chevy Impala being involved in numerous violent criminal acts at various locations in Johnson City. It described the color as burgundy or maroon, or dark maroon. One officer described a black Chevy Impala. What was consistent throughout was that it was a dark colored Chevy Impala. That was what the officers were looking for. A dark colored Chevy Impala. And, that is what Officer Eberhardt pulled over. It was not a white Chevy Impala, not a Toyota, not a Honda.

Second, the location of the stop was consistent with the Impala being involved in the other reported criminal activity. Officer Eberhardt testified that the vehicle was near the location of the other crimes. Thus, the physical proximity of the Chevy Impala to the other criminal acts supports the officer's reasonable suspicion that the occupants in this vehicle may very well be the ones wrecking havoc on the Johnson City community for the past hour.

Third, Officer Eberhardt made the stop shortly after the report of the crime occurred. This was not a case where the report of the crime and the stop were separated by any significant length of time. In fact, the stop occurred shortly after the reports of the crimes were rolling in to dispatch. That the stop occurred in temporal proximity to the reported time of the crimes also supports the officer's reasonable suspicion that this car could have been the one involved in this violent crime spree.

These reports create a "sufficiently narrow class of suspects" that justified Officer Eberhardt's decision to stop this particular black Chevy Impala. In other words, she had a reasonable suspicion to make a brief investigatory stop of this vehicle. Moreover, the stop was not any longer than necessary. As soon as she approached, she notice a dangerous weapon in the cupholder and ordered the occupants out. Once Dolo exited the car, his cocaine was discovered.[1] "[A] traffic stop 'must ... last no longer than is necessary to effectuate the purpose of the stop,' and 'the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.'" *United States v. Winters*, 782 F.3d 289, 296 (6th Cir. 2015)(quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). Nothing about this stop or the discovery of the cocaine was in violation of the Fourth Amendment.

Dolo argues that because the Chevy Impala he was in was black and the BOLO identified a maroon or burgundy color Impala, the stop was not supported by reasonable suspicion. The

---

[1] Dolo challenges only the stop. Thus, the Court's focus and analysis is only on the stop at issue.

Sixth Circuit has not held that such relatively minor disparities in color negate reasonable suspicion. In *United States v. Atkins,* 513 F.App'x 577, 580 (6th Cir. 2013), the Sixth Circuit addressed the basis for a stop where the color of the car stopped was different than identified by reports. In *Atkins*, officers were investigating a brawl where an individual brandished a firearm. *Id.* at 578. The report was that the suspect fled with two black females in a silver Chevy Blazer. *Id.* As officers were looking for the silver Blazer, they observed a "tannish" Blazer with two black females in the front and a third occupant in the back. Officers stopped the vehicle and during the stop discovered a firearm.

Atkins challenged the stop, claiming the color of the vehicle stopped was different than the one identified leaving the scene. The Sixth Circuit noted that "we can find no case law, and Atkins does not cite any, in which we have found a stop to be unreasonable based on such minor differences. To the contrary, we have found stops to be reasonable when the description given to officers was far more general and far more inaccurate." *Id.* at 580. As an example, it cited *United States v. Hurst*, 228 F.3d 751 (6th Cir. 2000). In *Hurst,* the Sixth Circuit found the stop of a dark-blue Mercury Cougar containing three passengers was reasonable even though the reports were for a dark-colored two-seat Ford Thunderbird. *Hurst,* 225 F.3d at 756-57. The Sixth Circuit noted that the totality of the circumstances – "the physical proximity of the car to the scene of the crime, the temporal proximity of the car's sighting to the commission of the crime, and the similarity of other physical features—gave rise to a reasonable suspicion of criminal activity despite any differences from the reported model of the subject car." *Atkins*, 513 F. App'x at 580.

In this case, the officer stopped a Chevy Impala, the same type of car as identified by dispatch in the BOLO. To be sure, the color was different, but it was not that different that would give cause for concern. See *United States v. Nance*, No. 3:09-cr-163, 2010 WL 4004782, at *10 (E.D. Tenn. Sept. 17, 2010) ("An investigatory stop may be reasonable even if the vehicle does

not perfectly match the description provided in a BOLO report."); *United States v. Cornielius*, 2011 WL 3949806 at *9 (E.D.T.N. July 26, 2011) (finding reasonable suspicion existed to stop a dark-colored Crown Victoria based upon report of a dark green Crown Victoria in the area of the stop). Dispatch identified a burgundy, maroon, or dark maroon Chevy Impala with two people. One officer identified a black Chevy Impala. As noted in *Atkins,* these minor differences do not undermine the stop, especially when considering the other corroborating facts.

In addition to stopping the same type of car identified in the BOLO, both the temporal and physical proximity of the vehicle to the reported crimes support the stop. "[P]roximity can be a relevant factor in forming reasonable suspicion." *United States v. Jackson*, 700 F. App'x 411, 416 (6th Cir.), *cert. denied*, 138 S. Ct. 430, 199 L. Ed. 2d 318 (2017). Officer Eberhardt specifically testified as to the consistency of both of those factors. In other words, Officer Eberhardt testified that she stopped this black Chevy Impala shortly after a report of another crime (temporal proximity). Given its location, she testified that this car could have been the vehicle that was involved in the most recent report of criminal activity (physical proximity). See *Hurst*, 228 F.3d at 757 (noting the vehicle was observed "at a location consistent with the time needed to travel to that point from the [burglary location] (i.e., less than a half-hour after the burglary was reported"). Her testimony went uncontradicted. Thus, the difference in the reported color does not undermine the legitimacy of the stop given the other corroborating evidence.

At the evidentiary hearing, Dolo argued that the windows in his vehicle were not tinted as reported by dispatch. He argues this undermines any finding of reasonable suspicion. But this argument is not persuasive because Officer Eberhardt testified that the windows in the black Chevy Impala were down and she could not see whether they were tinted or not. Dolo also argued that Officer Eberhardt lacked reasonable suspicion because some of the reports indicated that the driver and passenger were white. While there were some transmissions that the driver and passenger

were white, that was not consistent nor conclusive. Other reports were that the race of the occupants of the vehicle were not identified or the race was unknown. One report was that one of the occupants was biracial. Moreover, there were numerous reports of different criminal activity coming in. They were not all obviously related at the time. Some reports did not identify the driver or passenger at all. All of this shows that this factor does not undermine the reasonable suspicion Officer Eberhardt had in stopping this particular black Chevy Impala. Indeed, the officer stopped a dark colored Chevy Impala with two occupants, which is almost exactly what the BOLO addressed.

## IV. CONCLUSION

Because the undersigned finds that the investigatory stop was supported by reasonable suspicion and was not otherwise in violation of the Fourth Amendment, the undersigned **RECOMMENDS** that Dolo's Motion to Suppress [Doc. 23] be **DENIED** for the reasons outlined herein.[2]

Respectfully Submitted,

s/ Clifton L. Corker
United States Magistrate Judge

---

[2]Any objections to this report and recommendation must be served and filed within **fourteen (14) days** after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).